# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| In re: CHARLES B. EASLEY AND PATRICIA A. EASLEY,<br><br>　　　　Debtors, | Bankruptcy Case No. BK-S-22239-GS |
| CHARLES B. EASLEY SR. *et al.*,<br><br>　　　　Appellants,<br><br>v.<br><br>COLLECTION SERVICE OF NEVADA<br><br>　　　　Appellee. | Case No. 2:15-cv-00395-LDG<br><br>**ORDER** |

　　　　Appellants Charles B. Easley, Sr., and Patricia A. Easley filed a voluntary bankrupty appeal. They subsequently brought a motion against appellee Collection Service of Nevada pursuant to 11 U.S.C. §362(k) for contempt for violating the automatic stay. The Bankruptcy Court determined that Collection Service had violated the stay, that the violation was willful, and that the Easleys were damaged in the amount of $1,295. The Bankruptcy Court further awarded Easleys their attorney's fees for "the services [counsel] has provided to the debtors related to enforcing the automatic stay and remedying the stay violation, but excluding any fees subsequently incurred in pursuing the damages award,

itself." In so doing, the Bankruptcy Court cited *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010). Again relying on *Sternberg*, the Bankruptcy Court subsequently awarded attorney's fees in the amount of $1,277 representing $422 incurred to enforce the automatic stay and $855 incurred to prepare the fee application.

The Easleys appeal both the award of damages and the award of attorney's fees as inadequate.

Subsequent to the filing of this appeal and the parties' filing of their briefs, the Ninth Circuit overruled *Sternberg*, and held that §362(k) authorizes not only an award of attorney's fees incurred in enforcing the automatic stay, but further authorizes "an award of attorney's fees incurred in prosecuting an action for damages under the statute." *In re Schwartz-Tallard,* 803 F.3d 1095, 1101 (9th Cir. 2015). Given that the Bankruptcy Court expressly relied upon *Sternberg* and limited attorney's fees to only those incurred to enforce the stay, the court must vacate the award of attorney's fees and remand for further consideration in light of *Schwartz-Tallard*.

Conversely, the Court will affirm the Bankruptcy Court's award of damages.

In July 2012, Collection Service began efforts to contact Patricia Easley regarding a debt originally owed to Bennett Medical Services, which Bennett had assigned to Collection Service. On September 20, 2012, Collection Service contacted Patricia.

The Easleys filed their Chapter 13 voluntary bankruptcy petition on October 31, 2012. The Easleys listed Bennett as a creditor, but did not list Collection Service as a creditor.

In July 2013, Collection Service filed a collection action against Patricia, and served the Complaint and Summons on her.

On August 6, 2013, Patricia asked Collection Service to provide an itemized statement of the bill underlying the collection suit.

On August 30, 2013, Patricia and Collection Service established a repayment plan in which she would make monthly payments of $25. Collection Service received the first $25 payment on September 30, 2013, and an additional $50 on November 19, 2013. Patricia made no further payments. Collection Service obtained a default judgment against her in January 2014. A Notice of Entry of Default was sent to Patricia on March 12, 2014.

On March 21, 2014, Collection Service filed a Writ of Execution. On April 11, 2014, Patricia called Collection Service and indicated that she had received garnishment information for her employer. During this conversation, she indicated to Collection Service that she had an appointment that day with an attorney "on filing bankruptcy."

On April 22, 2014, Easleys' counsel sent Collection Service's counsel a fax demanding they cease the garnishment because the Easleys were in bankruptcy. The Las Vegas Constable garnished Patricia's wages on April 25, and May 9, 2014. Collection Service received a formal notice of the Easleys' bankruptcy on May 12, 2014, and on that same date faxed a release of execution to the Las Vegas Constable's Office and to Patricia's employer on May 12, 2014. Patricia informed Collection Service that her employer had not received the release, and it sent a further release of execution on May 20, 2014. Nevertheless, Patricia's wages were again garnished on May 23, and June 9, 2014.

The Easleys filed their motion for contempt on June 13, 2014. The funds garnished from Patricia were returned to her prior to the Bankruptcy Court's evidentiary hearing on damages. The Bankruptcy Court concluded that Collection Service had willfully violated the automatic stay and awarded $1,295 in damages, representing the $75 paid by Patricia to Collection Service, $100 for lost wages, $80 for obtaining cash advances as a result of the garnishment, $10 for a co-pay incurred to obtain medical treatment related to the emotional distress caused by the garnishment, $30 for medication prescribed as a result of the medical treatment, and $1,000 for emotional distress. The Court further noted that the

$75 had already been repaid, and credited the repayment against the damages, leaving an outstanding balance of $1,220.

The Bankruptcy Court concluded that Collection Service first received notice of the Easleys bankruptcy on April 22, 2014. The Easleys argue that the Bankruptcy Court erred by not attributing Bennett's awareness of the bankruptcy to Collection Service. The Easleys have not offered any meritorious argument that the notice received by Bennett should be imputed to Collection Service.

The Easleys argue, alternatively, that the Bankruptcy Court erred in not finding that Patricia placed Collection Service on notice of the bankruptcy on August 30, 2013. Collection Service's log notes of that discussion, written with numerous ambiguous or unclear abbreviations, include the recitation, "Everything else is going twrds her bk payments." The Bankruptcy Court expressed its difficulty in concluding whether or not this log indicated Patricia had informed Collection Service of the bankruptcy. The court noted conflicting evidence on whether "bk" referred to "back" or "bankruptcy." The court further noted that Patricia testified, that the Bankruptcy Court found her to be a credible witness, and that she testified to having informed Collection Service of the bankruptcy. The Bankruptcy Court further noted, however, that she lacked clarity in her testimony. This brought into question the reliability of her statement that she had informed Collection Service of the bankruptcy.

Conversely, the Bankruptcy Court noted the log notes also indicated the conversation continued after "bk" reference, and that conversation reflected an attempt to set up payments of $25 a month going forward. While acknowledging that it was within the "realm of plausibility" that such a conversation could occur after receiving a notice of bankruptcy, the Bankruptcy Court relied on several factors that such was not the case in this matter. Among these indicia, the court noted the amount of the asserted debt, that the conversation was an effort to set up an ongoing payment plan. Noting that the burden of

4

proof rested upon the debtor, the Bankruptcy Court concluded that the Easleys had not met their burden of showing that Collection Service's log of the August 30, 2013, conversation with Patricia indicated that she had provided notice of the bankruptcy in that conversation.

The Easleys have not shown that the Bankruptcy Court clearly erred in its finding. The parties presented conflicting evidence.  The Bankruptcy Court expressly acknowledged that the parties had presented conflicting evidence, and acknowledged the evidence offered by the debtors.  The Bankruptcy Court resolved the conflict as a tie, which required a finding against the debtors as the party bearing the burden of proof.  The finding of fact that "bk" did not refer to bankruptcy in Collection Service's August 30, 2013, log notes was not clearly erroneous.

The Easleys' argument that the Bankruptcy Court abused its discretion in limiting emotional distress damages to $1,000 is without merit, as is their argument that punitive damages are warranted.

Accordingly, for good cause shown,

THE COURT **AFFIRMS** the award of actual damages, **VACATES** the award of attorney's fees, and **REMANDS** to the Bankruptcy Court for further consideration of the award of attorney's fees in light of *In re Schwartz-Tallard*.

DATED this  30  day of September, 2016.

Lloyd D. George
United States District Judge